McKinney, J.,
delivered the opinion of the Court.
This was an action of debt, to recover the amount of several different calls on twenty-five shares of the capital stock of the company, alleged to have been subscribed by Lowe, and which he had refused to pay. Verdict and judgment were for plaintiff for $300, the amount of the several calls, with interest from the time calls were respectively demanded.
*661 Tbe main ground of defence to the action was, that the defendant’s subscription had been’ revoked and withdrawn before it was accepted or received by the company.
It appears that some two or three different routes had been prepared for the location of the road. And at a meeting of the board of directors, on the 21st of April, 1854, it was resolved that said road “be located upon the route from Edgefield to a point in or near the town of Springfield, in Robertson county,” * * * “ upon the condition that a subscription of good and reliable stock, to the amount of at least $150,000, shall be obtained upon said route, and in the civil district in which Springfield is situated,” It seems that great solicitude was felt by a portion of the inhabitants of Springfield to have that village made a point in the line of the road. And to that end, certain individuals, voluntarily, without any appointment or authority from the board of directors, got up subscription papers, and went to work, upon their own individual responsibility, with great energy and zeal, to procure subscribers. Some of these movements, it appears, were made prior to, and in anticipation of, the conditional location made by the board, on the 21st of April, 1854. Amongst others, who took it upon themselves to procure subscriptions for stock, was Edward S. Cheatham, a resident of Springfield. In the paper held by him, the terms of the subscription were stated in writing;’ and it was stipulated, that the promise and agreement to take and pay for the stock subscribed, was uufon the express condition that Springfield is made a point in said road.”
To this paper, and upon the foregoing condition, the defendant subscribed for forty shares, amounting to $1000; *662 which subscription was made after the conditional location of the road before mentioned.
At a subsequent meeting of the board, 29th of July, 1854, a resolution was adopted directing the •engineer, as soon as possible, to make the final location of the route from Edgefield to Springfield; and, . by another resolution, a call of eight per cent, on the stock subscribed was made, payable in monthly instal-ments of two per cent., frcm the 2d day of September following.
Afterwards, on the 9th of September, 1854, the board resolved to rescind, and did rescind and annul the previous resolutions fixing the location of the route from Edgefield to Springfield, on the ground, as the preamble to the resolution states, that the subscription books upon the Springfield route had not been delivered to the board, nor had payment of the calls made by the board, been made; and that, from further surveys, it was indicated that a cheaper and shorter route might be selected.
After this action of the board the Robertson county subscribers held a public meeting at Springfield, on the 25th of the same month, with a view to determine whether they would consent to pay the calls made by the board, while the location of the road was in suspense, running the risk of the final location being made by Springfield. At this meeting the defendant, Lowe, publicly repudiated and revoked his subscription, on the ground that the board had violated its agreement by annulling the previous location of the road; and distinctly directed E. S. Cheatham, who was present and had the subscription book or paper then in his posses *663 sion, to erase bis name, and not to deliver it to tbe board with bis name upon it, as be would no longer be a subscriber, and would not pay for tbe stock; and ever afterwards refused to bave any thing to do in tbe matter. Cheatbam, in reply, stated that the subscription book was still in his bands; that it bad not been delivered to tbe board, and would not be for some. time. After revoking his subscription, however, the defendant said, that if tbe location of the road were fixed by Springfield, and work commenced on it, he would be willing to pay tbe amount of bis stock, and even double it, if necessary.
Subsequently, by a resolution of tbe board, passed on the 19th of September, 1855, the road was permanently and unconditionally located on tbe Springfield route.
It appears that only about $130,000 of the $150,000 of stock required by tbe resolution of • tbe 21st of April, 1854, was made up.
It is distinctly proved by Mr. Watson, who was president of tbe company from March, 1854, to some time in 1856, that the Springfield subscription book was not delivered to the board by Cheatbam “until tbe final location of the road in September, 1855, or, perhaps, afterwards;” and not until after this time was tbe Springfield stock transferred to the books of the company. It is also positively proved by Mr. Watson, that he himself was the only agent authorized by the board to receive subscriptions for stock in the road; and that Cheatham was not an agent of the board. He likewise proves, that, as agent, he visited Springfield, made a *664 public address, and exerted himself to procure unconditional subscriptions for stock, but failed to obtain- any.
1 The general question upon the foregoing facts, is, was the defendant discharged from liability upon his subscription.
The Court, in substance, instructed the jury, that if the company had accepted the subscription of Lowe, and had performed, or bound itself to perform the condition, he would be liable. But, that until acceptance of his proposition and performance, or an obligation to perform the condition, Lowe had a right to withdraw it. But that to make the revocation effectual, so as to discharge his liability, it was necessary that the company should have had notice of such revocation, before its acceptance of defendant’s subscription. That if Cheatham were an authorized agent of the company to receive the subscription, then notice of the revocation to him would, be notice to the company.
But if Cheatham were not the agent of the company, in receiving the subscription, but it had been made to him as a mere volunteer, with the view that it should be offered by him to the company, as an inducement to the latter to locate the road by Springfield, then, Cheatham would be the agent of the defendant only; and notice to him of the withdrawal of his subscription by the defendant, would be of no avail. That to be effectual in the latter view, it must appear that notice of the revocation had been brought home to the company, before the defendant’s subscription had been tendered to and accepted by the company, otherwise than by notice to Cheatham, and that if the company *665 accepted and acted upon it, before obtaining such notice, the defendant would be bound.
We are unable to concur with his honor upon either of the foregoing propositions.
1st. Supposing Cheatham to have been the properly-constituted agent of the company; it is clear, that his agency would have extended no farther than merely to receive subscriptions for stock. When the subscription was complete, the authority of the agent was exhausted; and his agency, as to that particular subscription, was functus officio. He had no power to do any further act respecting it. The subscription instantly inured to the benefit of the company, and created, in law, a contract directly between the subscriber and the company, to abrogate or annul which, was not within the scope of the agent’s power. And, consequently, notice to such agent of an intention to revoke the subscription, would be a nullity. The notice in such case, if it could be available at all, must be to the company. But as the error upon this point was in favor of the plaintiff in error, we need not pursue the discussion further.
2d. Whether Lowe, in the absence of an express revocation, would have been bound by his conditional subscription, notwithstanding the act of the company in annulling the first location, on the faith of which the subscription Avas made; provided the condition was ultimately performed by the company, is a question not necessary, perhaps, to be considered in the determination of the present case. The weight of authority would seem to be, however, that he Avould be bound. The subscription in such case, seems to be regarded as a “standing offer,”, which, when accepted according to *666 its terms, and acted upon by the company, ought to be binding. Redfield on Railways, p. 97-8, note 4.
The case before us depends upon the effect of a positive act of revocation by Lowe, before the company had acquired any interest in the subscription.
From the proof we assume the fact to be, that Cheatham was not the agent of the company. The defendant’s subscription, at most, was only an offer or proposal intended to be afterwards submitted to the company, and which might be accepted or rejected at pleasure. It was founded on no consideration moving from the company. It created no contract between the defendant and the company, — imposed no binding obligation upon either, previous to delivery and acceptance by the company. Cheatham being the agent of the defendant, with whom the company had no connection; it is clear, that so long as the subscription book remained in his hands, and before the company had acquired any right or interest in it, it was competent to the defendant, (as between himself and the company,) to withdraw or revoke his subscription at pleasure, and without notice to the company, for the simple reason that the latter had not become a party to the subscription, and had no interest in it.
The neglect of Cheatham, whether intentional or not, to erase the name of Lowe, before delivering the book to the company, does not affect the question. There is no technical rule of law applicable to a case like the present, by which the defendant is precluded from availing himself of his discharge, because of want of notice to the company of the fact of revocation, before the subscription book came to its possession.
*667 The charge of the Court seems to assume, erroneously, that inasmuch as the defendant’s name had not been erased, nor had notice of the revocation been given, when the subscription book was delivered to, and accepted by the company, the latter was entitled to regard the defendant’s subscription as a valid and binding one, and to hold him liable accordingly. This is a mistaken conclusion. We have seen that no notice to the company was necessary. It received the subscription book at its own peril, and subject to every defence on the part of a subscriber, which existed at the time the book was delivered by Cheatham.
We are of opinion, therefore, that Lowe’s subscription was annulled, and that no recovery can be had against him thereon.
Judgment reversed.